# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

MELISSA A. MORGAN,

        Petitioner,     :     Case No. 1:19-cv-093

  - vs -                    District Judge Douglas R. Cole
                              Magistrate Judge Michael R. Merz

SHELBY SMITH, Warden,
  Dayton Correctional Institution,

                              :
        Respondent.

# REPORT AND RECOMMENDATIONS

This is a habeas corpus case, brought by Petitioner Melissa Morgan with the assistance of counsel. The Magistrate Judge reference in the case was recently transferred to the undersigned to help balance the Magistrate Judge workload in the District.

The case is ripe for decision on the merits on the Petition and Supplemental Memorandum in Support (ECF No. 1), the State Court Record (ECF No. 7), the Return of Writ (ECF No. 8), and Petitioner's Reply (ECF No. 10).

**Litigation History**

On October 20, 2014, Morgan stabbed her drug dealer, Maurice "Buster" Mundy, during a confrontation over whether she had taken $250 from him the night before. Initially indicted for felonious assault, she was reindicted for murder when he died. Claiming self-defense, she was

1

tried by a jury, convicted, and sentenced to fifteen years to life imprisonment, a sentence she is serving in Respondent's custody. Her conviction was affirmed on appeal. *State v. Morgan,* 2017-Ohio-7489 (Ohio App. 1st Dist. Sep. 8, 2017), appellate jurisdiction declined, 2018-Ohio-723 (2018). She then filed her Petition in this case, pleading the following grounds for relief:

> **GROUND ONE**: Petitioner was prejudiced and deprived of her right to a fair trial and due process of law when the State of Ohio was permitted to admit irrelevant and unduly prejudicial evidence that impugned her character.
>
> **GROUND TWO**: Petitioner was deprived of a fair trial and due process when the State of Ohio was permitted to admit evidence of her past violent acts, bad character, and untruthfulness.
>
> **GROUND THREE**: Petitioner was denied her right to a fair trial and due process of law when the trial court failed to grant a mistrial after admitting an improper deluge of highly prejudicial character evidence.

(Petition, ECF No. 1.)

## Analysis

Although Petitioner has separated her claims into three different grounds for relief, the gravamen of all three is that she was deprived of her right to a fair trial under the Sixth Amendment and her right to due process of law under the Fourteenth Amendment when the trial court improperly admitted evidence of her character and then did not correct the prejudice by granting a mistrial.

**Failure to Fairly Present these Constitutional Claims to the State Courts**

None of Petitioner's three grounds for relief was fairly presented as a constitutional claim to the First District Court of Appeals on direct appeal.

In her First Assignment of Error on direct appeal, Morgan asserted that admitting evidence of her propensity for violence violated Ohio R. Evid. 404(A) and deprived her of a fair trial (Appellant's Brief, State Court Record, ECF No. 7, PageID 49.) However, no federal case law was cited at all, no argument is made that admission of the character evidence made the trial fundamentally unfair, and the assignment of error is argued entirely in terms of abuse of discretion, claiming the trial judge had abused his discretion when he decided Morgan had presented enough evidence of her peaceable character to allow the State to rebut it.

In her Second Assignment of error regarding failure to declare a mistrial, Morgan asserted a "fair trial" was no longer possible after the violent character evidence was admitted, but again cited no federal case law and argued this mistrial assignment in terms of abuse of discretion.

In her Third Assignment of Error, Morgan complained of admission of the content of her recorded telephone calls from jail on the grounds the content was irrelevant and prejudicial because, among other things, she used some strong language. The assignment was argued in terms of Ohio R. Evid. 403(A) and no mention is made of any constitutional claims.[1]

To preserve a federal constitutional claim for presentation in habeas corpus, the claim must be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation, including presenting both the legal and factual basis

---

[1] The remaining assignments of error on direct appeal are unrelated to the pleaded habeas grounds for relief.

of the claim. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995); *Riggins v. McMackin,* 935 F.2d 790, 792 (6th Cir. 1991).

"Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2004); accord, *Jacobs v. Mohr*, 265 F.3d 407, 415 (6th Cir. 2001); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 674, 681 (6th Cir. 2000); *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006); *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004).

Merely using talismanic constitutional phrases like "fair trial" or "due process of law" does not constitute raising a federal constitutional issue. *Slaughter v. Parker,* 450 F.3d 224, 236 (6th Cir. 2006); *Franklin v. Rose,* 811 F.2d 322, 326 (6th Cir. 1987); *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000), *citing Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2nd Cir. 1984). Mere use of the words "due process and a fair trial by an impartial jury" are insufficient. *Slaughter*; *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004)(same). "A lawyer need not develop a constitutional argument at length, but he must make one; the words 'due process' are not an argument." *Riggins v. McGinnis*, 50 F.3d 492, 494 (7th Cir. 1995).

If a petitioner's claims in federal habeas rest on different theories than those presented to the state courts, they are procedurally defaulted. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Lorraine v. Coyle*, 291 F.3d 416, 425 (6th Cir. 2002), *citing Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *Lott v. Coyle*, 261 F.3d 594, 607, 619 (6th Cir. 2001)("relatedness" of a claim will not save it).

All of Morgan's relevant claims on direct appeal were for violation of the Ohio Rules of

Evidence or abuse of discretion in applying them. Abuse of discretion by a state court judge does not constitute a federal constitutional violation; pleading abuse of discretion in a state court appeal does not raise a constitutional claim. In particular abuse of discretion it is not a denial of due process. *Sinistaj v. Burt,* 66 F.3d 804 (6th Cir. 1995). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions, including questions on the admissibility of evidence. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825)(Marshall C. J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018)(Thapar concurring).

> With regard to evidentiary rulings, the standard for habeas relief is not easily met. "[F]ederal habeas courts review state court evidentiary decisions only for consistency with due process." *Coleman v. Mitchell,* 268 F.3d 417, 439 (6th Cir. 2001). "A state court evidentiary ruling will be reviewed by a federal habeas court only if it were so fundamentally unfair as to violate the petitioner's due process rights." *Coleman v. Mitchell,* 244 F.3d 533, 542 (6th Cir. 2001). Moreover, such rulings "are usually not to be questioned in a federal habeas corpus proceeding." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir.1988)). Even if errors are made in the application of state law, "[such] errors . . . especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus." *Walker v. Engle,* 703 F.2d 959, 962 (6th Cir.), cert. denied, 464 U.S. 962, 104 S. Ct. 396, 78 L. Ed. 2d 338 (1983). If a ruling is especially egregious and "results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003) (citing Coleman, 244 F.3d at 542). Importantly, however, as a general matter, "state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour*, 224 F.3d at 552 (quoting *Montana v. Egelhoff,* 518 U.S. 37, 43, 116 S. Ct. 2013, 135 L. Ed. 2d 361 (1996)). Ultimately, states have wide latitude with regard to evidentiary matters under the Due Process Clause. *Id.*

*Wilson v. Sheldon,* 874 F.3d 470, 475-76 (6th Cir. 2017).

Petitioner's three grounds for relief were not fairly presented to the First District Court of Appeals as federal constitutional issues and are thus procedurally defaulted. The Petition should be dismissed on that basis.

**Alternative Merits Analysis**

Alternatively if this Court were to reach the merits of Petitioner's federal claims, it should find that they are without merit.

Morgan complains of the admission of other bad acts to demean her character, for example, her use of a racial and a sexual epithet as to her victim, her discussion of her dishonest plans to avoid repossession of her car, etc. However the Sixth Circuit has held "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003), noting that the Supreme Court refused to reach the issue in *Estelle v. McGuire.* 502 U.S. 62 (1991).

Morgan cites *Michelson v. United States*, 335 U.S. 469, 475-476 (1948), as being to the contrary (Reply, ECF No. 10, PageID 937). The language quoted in the Reply is from a general discussion of the policy against admitting propensity evidence, but in *Michelson* the Court actually allowed admission of a twenty-seven year old arrest (not conviction) and affirmed the conviction from the trial in which the admission occurred. Thus the discussion of the difficulties with propensity evidence in *Michelson* is entirely dictum. Moreover, *Michelson* was a federal prosecution for bribery and Justice

Jackson's discussion is about the common law of evidence[2]; there is no constitutional discussion at all.

Petitioner also relies on *Brown v. O'Dea*, 227 F.3d 642 (6th Cir. 2000). There the court assumed *arguendo* that the trial court had erred under state law in admitting a particular expert opinion and opined that "a violation of a state's evidentiary rule warrants habeas corpus relief only when such violation results in the denial of fundamental fairness, and concomitantly, a violation of due process." *Id.* at 645, citing *Cooper v. Sowders*, 837 F.2d 284, 287 (6th Cir. 1988). The *Brown* court further held that "whether the admission of prejudicial evidence constitutes a denial of fundamental fairness turns upon "whether the evidence is 'material in the sense of a crucial, critical highly significant factor.'" *Id.* citing *Leverett v. Spears,* 877 F.2d 921, 925 (11th Cir. 1989) (quoting *Redman v. Dugger*, 866 F.2d 387, 390 (11th Cir. 1989)). Again, this language is dictum because the *Brown* Court upheld dismissal of the petition. And in this case we do not need to assume *arguendo* a violation of state evidence law in admitting the disputed evidence because the First District has decided that question of state law in favor of admissibility.

**Admission of Character Evidence**

Assessed in the context of this case, cross-examination of Morgan about prior acts of violence was not fundamentally unfair. There was no dispute at trial that she had stabbed Mundy; the case depended on whether she could persuade the jury that she had acted in self-defense. The First District described that defense as follows:

> Morgan had the burden of proving that she had acted in self-defense by a preponderance of the evidence. *State v. Bandy,* 1st Dist. Hamilton No. C-160402, 2017-Ohio-5593, ¶ 56. Morgan was required to establish (1) that she was not at fault in creating the

---
[2] Federal evidence law was not codified until the Federal Rules of Evidence were enacted by Congress, effective as of January 2, 1975.

situation, (2) that she had a bona fide belief that she was in danger of death or great bodily harm, and that her only means of escaping that danger was through the use of similar force, and (3) that she did not violate any duty to retreat or avoid the danger. Id. With respect to the duty to retreat, "in most cases, 'a person may not kill in self-defense if he has available a reasonable means of retreat from the confrontation.'" State v. Thomas, 77 Ohio St.3d 323, 326, 1997-Ohio-269, 673 N.E.2d 1339 (1997), quoting State v. Williford, 49 Ohio St.3d 247, 250, 551 N.E.2d 1279 (1990).

*Morgan*, 2017-Ohio-723, ¶ 36.

The First District, considering the evidence presented, noted how the jury could reasonably have rejected self-defense on several of its elements:

> [*P40] In light of the evidence presented, the jury could reasonably have found that Morgan had failed to prove by a preponderance of the evidence the elements of self-defense. Despite testifying that she wanted to resolve her conflict with Mundy peacefully, Morgan purposely took a deadly weapon with her to their meeting, and she responded to Mundy's punch with deadly force. The jury was in the best position to judge the credibility of the witnesses, and it was entitled to reject Morgan's testimony that she had acted in self-defense. *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. It was within the province of the jury to conclude that she failed to establish that she was not at fault in creating the situation and to disbelieve Morgan's explanation that she had been jumping up and down prior to Mundy's arrival because she was cold. The jury instead could have found that she was behaving in such a way to prepare herself for a fight because she had no intention of resolving the conflict peacefully.
>
> [*P41] The jury also could have determined that Morgan had failed to prove by a preponderance of the evidence that she had not violated any duty to retreat or avoid the danger. The confrontation took place in a public park. Rather than leave the park after being hit by Mundy, Morgan stabbed Mundy in the neck.

*Id.*

Thus the issue of Morgan's character for peacefulness was not necessarily critical: because the jury delivered a general verdict, it could have decided she failed in her duty to retreat. Assuming that the critical issue for the jury was whether Morgan created the situation that ended

in the stabbing, it was apparently undisputed that Morgan, knowing Mundy was looking for her, arranged to meet him in the park.

But assuming Morgan's character trait of peacefulness or not was critical to the jury's decision, the question under the Ohio Rules of Evidence is whether she sufficiently "opened the door" by testifying to her own peaceable nature. In concluding that she had, the First District wrote:

> At a side-bar conference, defense counsel argued that the prosecutor's questions were improper because Morgan had not testified as to her character on direct. The trial court responded, "I disagree 100% percent." In support of its decision to allow these questions, the court stated, "I do believe at this point she never mentioned the word peaceful. Her testimony about the jaw, about her acting tough but being weak all these other things, to me, certainly culminated in her presentation being a character of a peaceful nature who never wanted to fight. When I heard those things I thought, in my opinion, the door has been opened."

*Morgan*, 2017-Ohio-723, ¶ 12. The First District found no abuse of discretion in this ruling and cited Morgan's testimony that gave rise to the conclusion that she had "opened the door."

The Magistrate Judge concludes there was no unfairness at all in allowing the prosecutor to ask these questions on cross examination. When a person presents herself as being of a peaceful character and wanting to resolve disputes in a non-violent adult way, there is no unfairness in permitting a cross-examiner to bring up three incidents in which she assaulted another person.[3] The claim that Morgan was denied a fair trial because of these questions is without merit, whether considered under the Sixth or Fourteenth Amendment.

---

[3] The Magistrate Judge assumes the prosecutor had a good faith basis in fact for asking the questions, as is always required with such examination. Petitioner has not suggested there was no good faith basis.

9

**Admission of Recorded Jail Telephone Calls**

Morgan also claims that admission of recordings of telephone calls she made from jail denied her a fair trial. In particular she complains that the jury heard her say:

> 1) The decedent was a "fucking nigger" who was mad that she wouldn't sleep with him
> 2) She had been given the nickname of "shank-shank" by her fellow inmates;
> 3) She was glad the decedent had suffered a stroke and died;
> 4) Her "record" shows that she is "crazy";
> 5) The decedent was a "motherfucker";
> 6) That she does not have custody of her own daughter and that she may not be a fit parent;
> 7) That she was hiding her car from the repo man;
> 8) Ms. Morgan disrespecting her grandmother, repeatedly saying "fuck you" to her;
> 9) That her grandmother was disappointed with her over her drug use;
> 10) That Ms. Morgan was suffering from a vaginal infection.

(Reply, ECF No. 10, PageID 938-39.)

The citations given in the Reply for these calls are to the trial transcript with the page numbers supplied by the court reporter, e.g. "Doc #7, T.p. 542" for item 1 above. The proper citation to that place in the record is "Trial Tr., State Court Record, ECF No. 7-3, PageID 664)"[4]. However, when those pages are accessed, the content of the jail calls is not present, presumably because the court reporter did not transcribe them. The First District Court of Appeals apparently did review the calls:

> [*P21] We have reviewed the particular calls and specific statements contained therein challenged by Morgan. A majority of the challenged statements were relevant, and their probative value was not outweighed by any danger of unfair prejudice. See Evid.R.

---
[4] S. D. Ohio Civ. R. 7.2(B)(5) requires that "all filings in this Court that reference a prior filing must provide pinpoint citations to the PageID number in the prior filing being referenced, along with a brief title and the docket number (ECF No. ___ or Doc. No. ___) of the document referenced.

403(A). With respect to the few irrelevant statements contained in the calls, we find that they resulted in no prejudice to Morgan. See *State v. Issa*, 93 Ohio St.3d 49, 64, 2001-Ohio-1290, 752 N.E.2d 904 (2001).

*Morgan*, 2017-Ohio-723.

On appeal, the State justified offering these recordings as follows:

> Morgan's statements on the calls were admissible as admissions by a party opponent under Evid. R. 801 (D)(2). Generally, all relevant evidence is admissible, and irrelevant evidence is inadmissible. Defendant's statements at issue are clearly relevant, as they concern defendant's involvement in the stabbing of Mr. Mundy.
>
> Here, the calls were more probative than prejudicial. The calls were indicative of defendant's efforts to establish an alibi and to persuade witnesses to lie for her at trial. In the calls, Morgan is heard recounting her version of what happened at the park, and telling her grandmother what she is "supposed" to say. (T.p. 478, 483, 486-88, 491-99).
>
> A criminal defendant's attempt to create a false alibi "strongly indicates consciousness of guilt." The trial court acted responsibly and diligently by reviewing the statements the prosecutor hoped to play and by listening to the parties' respective arguments as to each call. The trial court sustained defendant's objections to references to her record, and to irrelevant statements about child custody issues and social security claims (T.p. 479, 484-89, 492)
>
> Some discussion about custody issues was intertwined with defendant's discussion about her case so the trial court allowed it. (T.p. 484-89) Similarly, the racial slurs and curse words were intertwined with defendant's discussion of the stabbing and her frustration with her grandmother for not supporting defendant's story. Although a few statements in the calls certainly could be objectionable, on balance the trial court did not abuse its discretion by admitting the evidence or by concluding that the probative value of it was not outweighed by the danger of unfair prejudice.

(Appellee Brief, State Court Record, ECF No. 7, PageID 82-83.)

Petitioner claims in her Reply that "whether or not Ms. Morgan stabbed the decedent was not a material issue because it was undisputed that Ms. Morgan had done so." However, Petitioner gives no record reference for this issue's having become undisputed. There is no stipulation to that effect,

11

at least that has been called to this Court's attention. There were a number of eyewitnesses, but apparently Morgan was trying from jail to concoct an alibi. Until the fact of her stabbing Mundy and his death as a result was established by evidence, the State was entitled to put on whatever admissible evidence it had. Her admissions as a party opponent would have been the best such evidence.

It is certainly true that some of her statements in the calls would have done little to build her up in the eyes of the jury, e.g., her use of racial and sexual epithets. But even though this Court does not have the recordings before it, there is a factual basis in the record for the trial judge's finding, repeated on appeal, that the plainly relevant portions of the recordings were "intertwined" with the damaging parts, e.g., her saying "fuck you" to her grandmother when the grandmother refused to be coaxed into lying. Whether it would have been easy or difficult to start and stop the tapes in a way to exclude the parts Morgan objects to is a question on which no evidence was apparently presented to the Ohio courts. Certainly nothing to that point in the record has been called out in the briefing. Under those circumstances, there is no basis for this Court to second guess the state courts' finding that the statements were "intertwined."

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice because Petitioner failed to fairly present her constitutional claims to the state courts. In the alternative, her claims should be dismissed as without merit. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively

frivolous and should not be permitted to proceed *in forma pauperis*.

March 24, 2020.

s/ *Michael R. Merz*
United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.