UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MELISSA A. MORGAN,

      Plaintiff,

  v.

WARDEN, DAYTON
CORRECTIONAL SYSTEM,

      Defendant.

Case No. 1:19-cv-93
JUDGE DOUGLAS R. COLE
Magistrate Judge Merz

## OPINION AND ORDER

This cause is before the Court on Plaintiff Melissa A. Morgan's Objection (Doc. 14) to the Magistrate Judge's Report and Recommendations ("R&R") (Doc. 13), which recommends denying Morgan's Petition for a Writ of Habeas Corpus (Doc. 1). For the reasons discussed below, the Court **ADOPTS** the R&R (Doc. 13) in full, **OVERRRULES** Morgan's Objection (Doc. 14), **DISMISSES** Morgan's Petition for a Writ of Habeas Corpus (Doc. 1) **WITH PREJUDICE**, and **CERTIFIES** that an appeal of this Order would not be taken in good faith.

## BACKGROUND

On October 20, 2014, Melissa Morgan stabbed Maurice Mundy in the neck. *State v. Morgan*, Appeal No. C-160495, 2017 WL 3951907, at *1 (Ohio Ct. App. Sept. 8, 2017). Mundy died from the resultant injuries approximately one year later. *Id.* At trial, Morgan argued that she had stabbed Mundy in self-defense after Mundy hit her in the face during an altercation over $250 he said Morgan had stolen from him. *Id.*

The jury rejected Morgan's defense and found her guilty of murder. *Id.* Morgan received a sentence of fifteen years to life imprisonment. *Id.*

Morgan appealed her conviction to the Ohio Court of Appeals, First District, Hamilton County. *Id.* In her appeal, Morgan asserted various errors by the trial court, including several evidentiary rulings discussed in more detail below. In her briefing on appeal, Morgan did not cite federal constitutional case law or expressly refer to the Sixth or Fourteenth Amendments to the United States Constitution. (R&R, Doc. 13, #954; *see also* Obj. to R&R ("Obj."), Doc. 14, #966). The Ohio Court of Appeals affirmed Morgan's conviction. *Morgan*, 2017 WL 3951907, at *1. The Supreme Court of Ohio declined jurisdiction. *State v. Morgan*, 92 N.E.3d 881 (Table) (Ohio 2018).

In her Petition for a Writ of Habeas Corpus (Doc. 1) here, Morgan argues that the trial court violated her constitutional rights to a fair trial and due process by allowing the prosecution to present character evidence of her propensity for violence, as well as other evidence whose prejudicial effect outweighed its probative value. Specifically, Morgan argues that the prosecution introduced recordings of telephone conversations from the jail in which she, among other things, referred to the victim using a racial epithet, stated she was glad he died, said other inmates had given her the nickname "shank-shank," discussed hiding her car from the repo man, and stated that she did not have custody of her daughter and may not be a fit parent. (Reply to Return of Writ ("Reply"), Doc. 10, #938–40). Morgan also argues that the prosecution impermissibly cross-examined her about past incidents in which she had assaulted

other people. (*Id.* at #940). For these reasons, Morgan argues, the trial court's denial of her motion for a mistrial violated her constitutional rights. (*Id.* at #941).

On March 24, 2020, Magistrate Judge Merz filed his R&R (Doc. 13), recommending that this Court dismiss Morgan's habeas petition with prejudice. First, the Magistrate Judge found that Morgan's constitutional claims were procedurally defaulted because Morgan failed to fairly present them to the state appellate courts on direct appeal. (R&R, Doc. 13, #954–57). Second, the Magistrate Judge concluded in the alternative that, even reaching the merits of Morgan's constitutional arguments, the evidentiary determinations that form the basis for her habeas petition do not amount to a violation of her federal constitutional right to a fair trial. (*Id.* at #957–63).

On April 5, 2020, Morgan objected to the R&R. (Obj., Doc. 14). The matter is now fully briefed and ready for the Court's review.

## LEGAL STANDARD

If a party objects within the allotted time to a report and recommendation, the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

3

## LAW AND ANALYSIS

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") applies to all habeas corpus petitions filed after April 24, 1996, and requires "heightened respect" for legal and factual determinations made by state courts. *See Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). Section 2254(d), as amended by the AEDPA, provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

This is a "difficult to meet and highly deferential standard," *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citations and internal quotation marks omitted), because all findings of fact by the state court are presumed to be correct and can be rebutted only by "clear and convincing evidence," *Mitchell v. Mason*, 325 F.3d 732, 737–38 (6th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)). As to legal conclusions, a federal habeas court may overturn a state court's application of federal law only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Nevada v. Jackson*, 569 U.S. 505, 509–10 (2013) (per curiam) (citation and quotation omitted). And habeas provides relief only for

violations of the U.S. Constitution. State law determinations, even if incorrect, cannot serve as the basis for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

Relatedly, a litigant seeking habeas relief on federal constitutional grounds must have "fairly presented" her constitutional claims to the state courts first. *Jacobs v. Mohr*, 265 F.3d 407, 415 (6th Cir. 2001); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000); *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006). To "fairly present" a federal constitutional claim to the state courts, it is not enough to use phrases like "fair trial" or "due process"; rather, the litigant must make some *argument* identifying both the factual and the legal basis for the constitutional claim. *See Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006) ("bare and isolated citation to the Fourteenth and Sixth Amendments" insufficient); *McMeans*, 228 F.3d at 681 ("General allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present' claims that specific constitutional rights were violated.") (citation omitted); *Riggins v. McGinnis*, 50 F.3d 492, 494 (7th Cir. 1995) ("A lawyer need not develop a constitutional argument at length, but he must make one; the words 'due process' are not an argument.").

In this circuit, courts determining whether a habeas petitioner has fairly presented a constitutional issue to the state courts look in particular for the following four indicia in the petitioner's briefing: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well

5

within the mainstream of constitutional law." *McMeans*, 228 F.3d at 681; *Slaughter*, 450 F.3d at 236.

Here, the Magistrate Judge determined that Morgan did not fairly present her constitutional claims to the state courts. The Court agrees. Morgan's briefing to the state courts does not contain any of the indicia identified in the Sixth Circuit case law discussed above.

With respect to the first factor, Morgan concedes that her briefing to the state courts did not include any federal case law interpreting the U.S. Constitution. (Obj., Doc. 14, #966). Morgan suggests, however, that her briefing to the Ohio Court of Appeals met the second factor because she cited a state court case for the following propositions: "[a] mistrial should be declared when the ends of justice so require and a fair trial is no longer possible," and "[a] fair trial was no longer possible after the State was permitted to question Ms. Morgan about specific instances tending to show she had a propensity to commit violent acts." (*Id.* (citing State Ct. R., Doc. 7, #60 (citing *State v. Franklin*, 580 N.E.2d 1, 9 (Ohio 1991)))). But the single state court case Morgan cited for these two propositions, like the other cases cited in her state court briefing, does not contain pertinent federal constitutional analysis. Rather, the relevant portion of the case solely addresses the admissibility of evidence under the Ohio Rules of Evidence. *See Franklin*, 580 N.E.2d at 9 (mistrial unnecessary because any evidentiary or other errors were harmless). Thus, Morgan did not even cite, much

6

less rely on, either state or federal cases employing pertinent federal constitutional analysis.[1]

Moreover, the quotations above also fail to satisfy the third factor. They constitute exactly the sort of "talismanic" invocations of the phrase "fair trial" without further elaboration that have been held insufficient to fairly present a federal constitutional issue to a state court. (*See* R&R, Doc. 13, #955 (citing cases)). In context, they support only Morgan's state-law argument that the trial court abused its discretion under the Ohio Rules of Evidence by admitting the evidence in question. (*See* State Ct. R., Doc. 7, #60) ("A trial court abuses its discretion where it refuses to grant a motion for a mistrial founded on the state's raising a defendant's character for violence where such questioning is forbidden by Evid. R. 404(A) and where the defendant's sole defense is self-defense.") Thus, Morgan did not phrase her claims in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right, but instead argued them exclusively in terms of Ohio's state law of evidence. *See McMeans*, 228 F.3d at 681. Finally, Morgan does not argue that her briefing to the Ohio Court of Appeals alleged facts "well within the mainstream of constitutional law," nor does she cite any authority that would suggest that this is the case. *See id.*

Nevertheless, Morgan argues that she "carved more detail into her constitutional argument" in her briefing to the Ohio Supreme Court. (Obj., Doc. 14,

---

[1] Morgan did cite *State v. Glover*, 517 N.E.2d 900 (Ohio 1988), which happens to be a double jeopardy case, but that is irrelevant here as (1) Morgan does not claim a double jeopardy violation, and (2) Morgan cited the case only for the general legal standard applicable to a mistrial. (State Ct. R., Doc. 7, #60).

#966). She cites the following passage from her Ohio Supreme Court brief, which the Court reproduces here in full:

> The Constitutional requirement that the State prove a defendant's guilt beyond a reasonable doubt is the cornerstone of the common law and prohibition against using unduly prejudicial evidence to secure a conviction is the bulwark that fortifies a defendant's right to a fair trial and due process of law. Where the Rules of Evidence were promulgated to ensure that these essential rights are not trampled, the admissibility of character evidence remains one of the most litigated evidentiary issues. In this case, as will be discussed below, a young woman was tried for murder although all agreed she was in the process of being attacked by the African-American "victim." Because her sole defense was self-defense, it was imperative that she waive her Fifth Amendment rights by taking the stand, and knowing this, the prosecution played numerous recorded jail calls for the jury during its case-in-chief, which, although minimally if not completely irrelevant to the charge, portrayed her as a hot-headed and violent racist nick-named "shank-shank" who was not only physically unclean, a criminal, a bad parent, a drug addict, but also a liar. Upon taking the stand, she insisted that she had hoped to resolve the situation with her eventual attacker "calmly" and explained her belligerent demeanor by candidly admitting that she had grown up a "Crip" and had always "acted tough." Although she never once claimed to be a non-violent person and tacitly admitted that she was prone to fighting, the prosecution was allowed to cross-examine her using a litany of unrelated prior conduct that again cast her in the roles of a generally violent person and a liar. Not surprisingly, she was ultimately convicted.
>
> As noted by the Honorable United States Supreme Court Justice Robert H. Jackson "[c]courts [*sic*] that follow the common law tradition almost unanimously have come to disallow resort by the prosecution to any kind of evidence of a defendant's evil character to establish a probability of his guilt [ ] … The State may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. [ ] The inquiry is not rejected because character is irrelevant; [ ] on the contrary, it is said to weigh too much with the jury, and to so overpersuade them as to prejudice one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues,

8

> unfair surprise, and undue prejudice." *Michelson v. United States*, 69 S.Ct. 213, 218–219, 335 U.S. 469, 475–76, 93 L.Ed. 168 (1948) (citations and footnotes omitted). After all, "how is one supposed to have a fair trial on the questions of guilt when the whole tenor of the testimony being presented has the undeniable effect of causing the jurors to view the accused in a very negative light?" *State v. Spaulding*, 2016-Ohio-8126, at ¶ 325 [*sic*], 2016 WL 7386160 (Justice O'Neill dissenting).

(Obj., Doc. 14, #966–67 (citing State Ct. R., Doc. 7, #111–12)).

The above passage argues Morgan's appeal to the Ohio Supreme Court in terms of evidentiary rather than federal constitutional issues. For example, to the extent that Morgan refers expressly to specific provisions of the U.S. Constitution, it is not to the Sixth and Fourteenth Amendments that provide for the fair trial and due process rights on which her habeas claims are based. Rather, Morgan refers to "[t]he Constitutional requirement that the State prove a defendant's guilt beyond a reasonable doubt." (*Id.* at #966). But Morgan does not argue in her petition that the state trial court erroneously instructed the jury as to the burden of proof in a criminal case, and thus does not present that constitutional issue as a basis for relief here. (*See id.* at #966–67). Likewise, Morgan refers to the Fifth Amendment in the context of explaining her decision to take the stand, but there is also no Fifth Amendment issue with respect to her petition for habeas relief. (*Id.* at #967).

The lengthy quotations from *Michelson* and *Spaulding* further confirm the view that Morgan was making an evidentiary rather than a constitutional argument. While *Michelson* preceded the Federal Rules of Evidence, it concerns the federal common law of evidence rather than federal constitutional law, as the Magistrate Judge correctly recognized. *See Michelson*, 335 U.S. at 475–76; *see also* R&R, Doc. 13,

9

#957–58. Likewise, *Spaulding* discusses the admission of prior-act evidence in the trial court as a matter of the Ohio Rules of Evidence rather than the U.S. Constitution. *See Spaulding*, 89 N.E.3d 554, 557 *et seq.* (Ohio 2016). Thus, Morgan's references to her state court briefing tend to confirm rather than refute that she did not fairly present her fair trial and due process claims to the state courts.

True, Morgan invokes "a defendant's right to a fair trial and due process of law" at the outset of her evidentiary argument. (Obj., Doc. 14, #967). But Sixth Circuit case law suggests that it is not enough to tack such an entirely unelaborated claim of a federal constitutional violation onto an argument otherwise grounded in state law. For example, the petitioner in *Slaughter* challenged the trial court's decision to allow a juror to question him. 450 F.3d at 235. In his state court briefing, he had cited the "14th and 6th Amendments" and had stated that "[b]ased on this denial of due process and a fair trial by an impartial jury, appellant is entitled to a new trial," but had otherwise argued the issue under Kentucky law. *Id.* at 236. The Sixth Circuit considered this a procedural default of the petitioner's federal constitutional arguments. *Id.* If anything, this is a clearer case than *Slaughter*, because Morgan did not even explicitly cite the Sixth or Fourteenth Amendments to the U.S. Constitution in pressing her evidentiary arguments in state court.

Morgan last argues that her state court briefing alleged a federal constitutional violation because it concerned the "fundamental fairness" of her trial. (Obj., Doc. 14, #968). She cites *Williams v. Taylor*, 529 U.S. 362, 375 (2000), for the proposition that "errors that undermine confidence in the fundamental fairness of the state

10

adjudication certainly justify the issuance of the federal writ." (Obj., Doc. 14, #968). Morgan further cites *Brown v. O'Dea*, 227 F.3d 642, 645 (6th Cir. 2000), in support of her argument that a violation of state evidentiary rules can amount to a constitutional violation "when such violation results in the denial of fundamental fairness, and concomitantly, a violation of due process." (Obj., Doc. 14, #968). But there are two problems. First, Morgan did not use the phrase "fundamental fairness" in her state court briefing. Second, even if she had, it is doubtful whether mere use of this phrase would have fairly presented a federal constitutional argument to the state courts, given that similar phrases like "fair trial" and "due process"—phrases that she did include in describing her argument to the Ohio Supreme Court—are insufficient to do so, as noted above. *See Slaughter*, 450 F.3d at 236; *McMeans*, 228 F.3d at 681; *Riggins*, 50 F.3d at 494.

To be sure, Morgan unsurprisingly characterized her trial as unfair. But if that in itself were enough to fairly present a constitutional argument, then it is hard to see how *any* claim of a non-harmless evidentiary violation would not automatically also state a tacit federal constitutional claim to the state court. As discussed above, though, that is not the law: a defendant must make a specific argument that the state-court proceeding violated a particular federal constitutional right. Because Morgan has not met that standard, the Court agrees with the Magistrate Judge that Morgan did not fairly present her federal constitutional arguments to the state courts. That, in and of itself, is sufficient to doom her petition here.

11

Alternatively, even if Morgan had not procedurally defaulted her claims, the Magistrate Judge also concluded that the claims lack merit. Again, the Court agrees. Under the demanding legal standards discussed above, Morgan's fair trial claim based on admission of character or propensity evidence does not entitle her to habeas relief. As the Sixth Circuit has noted, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). True, as discussed above, the Sixth Circuit has declined to foreclose the possibility that "a violation of a state's evidentiary rule" could warrant habeas relief where "such violation results in the denial of fundamental fairness, and concomitantly, a violation of due process." *O'Dea*, 227 F.3d at 645. Specifically, improper admission of evidence might warrant habeas relief where the evidence was "material in the sense of a crucial, critical highly significant factor" in the jury's decision to convict. *Id.* (quoting *Leverett v. Spears*, 877 F.2d 921, 925 (11th Cir. 1989)). But, as the Magistrate Judge correctly noted, this discussion is dicta. (R&R, Doc. 13, #958).

Moreover, even if this avenue to habeas relief is available in an appropriate situation, it does not help Morgan here for two reasons. First, the state courts of Ohio have determined that there was no violation of Ohio's Rules of Evidence with respect to the character and propensity evidence at issue here. *See Morgan*, 2017 WL 3951907, at *2–3. Second, Morgan has not met her burden to establish that the admission of any of the evidence at issue here was "a crucial, critical highly significant

12

factor" in the jury's decision to convict her. As the Magistrate Judge noted, the jury would not have had to rely on the evidence at issue here in reaching its conclusion that Morgan did not act in self-defense. (R&R, Doc. 13, #959–60). For example, instead of believing that Morgan was an inherently violent person, the jury might have concluded that Morgan made no attempt to fulfill her duty to retreat before she stabbed Mundy, who was not armed, in the neck. (*Id.* at #959 (citing State Ct. R., Doc. 7, #105)). In short, even if admission of character or propensity evidence at trial can sometimes be so egregious as to deny a defendant fundamental fairness, in this case, Morgan has not shown that the evidence at issue was so important to the jury's determination as to support a constitutional claim.

The Court thus finds that Morgan's habeas petition lacks merit. Because of the lack of legal support for Morgan's underlying constitutional claims, and because the record shows that Morgan did not fairly present those claims to the state courts, the Court also determines that reasonable jurists would not disagree with the Court's conclusions. Accordingly, the Court will also deny Morgan's request for a certificate of appealability. (*See* Obj., Doc. 14, #972).

## CONCLUSION

For the reasons above, the Court **ADOPTS** the Magistrate Judge's Report and Recommendations (Doc. 13) and **OVERRULES** Morgan's Objection (Doc. 14). The Court **DISMISSES WITH PREJUDICE** Morgan's Petition for a Writ of Habeas Corpus (Doc. 1), and **CERTIFIES** that an appeal of this Order would not be taken in

13

14

good faith. The Court therefore **DIRECTS** the Clerk to enter judgment and **TERMINATE** this case on its docket.

    **SO ORDERED.**

December 1, 2021
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**